UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WELLS FARGO COMMERCIAL DISTRIBUTION FINANCE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> 6TH GEAR HOLDINGS, INC., <br><br> Defendant. | Case No. 19-cv-04617-JSC <br><br> **ORDER RE: DEFENDANT'S MOTION TO SET ASIDE DEFAULT; PLAINTIFF'S APPLICATION FOR WRIT OF POSSESSION AND INJUNCTIVE RELIEF** <br><br> Re: Dkt. Nos. 14, 17 |

Plaintiff Wells Fargo sues 6th Gear Holdings, Inc. ("6th Gear") under California state law arising out of 6th Gear's alleged default of a financing agreement wherein Plaintiff extended credit to 6th Gear to allow it to purchase inventory for public sale. (Dkt. No. 1.)[1] Now before the Court is 6th Gear's motion to set aside entry of default.[2] (Dkt. No. 14.) Also pending before the Court is Plaintiff's application for a writ of possession seeking the return of specific items of inventory obtained by 6th Gear pursuant to the financing agreement and a Court order enjoining 6th Gear from disposing of that inventory pending its seizure, pursuant to Federal Rule of Civil Procedure 64 and California Code of Civil Procedure section 512.010.[3] (Dkt. No. 17.) After careful consideration of the parties' briefing and having had the benefit of oral argument on November 21, 2019, the Court GRANTS 6th Gear's motion to set aside default and DENIES Plaintiff's

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[2] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (*See* Dkt. Nos. 7 & 16.)

[3] On November 18, 2019, 6th Gear filed a motion to stay proceedings and compel arbitration. (Dkt. No. 27.) The motion is noticed for hearing on January 16, 2020.

application for a writ of possession because it is again facially deficient.

**BACKGROUND**

**I.    Complaint Allegations[4]**

6th Gear is a California corporation with its principal place of business in Alamo, California. (Dkt. No. 1 at ¶ 3.) Plaintiff entered into an inventory financing agreement (the "Agreement") with 6th Gear in November 2017. Under the Agreement, Plaintiff agreed to finance 6th Gear's purchase of inventory and 6th Gear agreed to pay certain sums to Plaintiff. (*Id.* at ¶ 6.) 6th Gear granted Plaintiff a security interest in all of 6th Gear's personal property, including its "inventory, equipment, fixtures, other goods, and all products and proceeds of [same]," as collateral (the "Collateral"). (*Id.* at ¶ 7.)

Pursuant to the Agreement, Plaintiff extended a line of credit to 6th Gear, allowing it to acquire "certain types of inventory to be sold to the public, including but not limited to motorcycles, parts, accessories, and riding gear, including but not limited to motorcycle helmets and jackets" ("Inventory Collateral"). (*Id.* at ¶¶ 9, 11.) Plaintiff performed its obligations under the Agreement and alleges that 6th Gear defaulted by failing to remit payment for Inventory Collateral that 6th Gear "sold to third party buyers in the ordinary course of its business, an activity described in the commercial lending industry as selling 'out of trust.'" (*Id.* at ¶ 12.) On March 12, 2019, Plaintiff notified 6th Gear that it was in default "for failure to make payment of $145,994.86 when due, which included $122,566.10 in proceeds from sales of Inventory Collateral." (*Id.* at ¶ 13; *see also* Dkt. No. 1-3, Ex. 3 at 2.) Plaintiff demanded payment of the amount due by March 22, 2019 and "confirmed its intent to accelerate the payment of all debt owed . . . if [6th Gear] did not cure the default." (Dkt. No. 1 at ¶ 13.) 6th Gear failed to cure its default by the deadline. (*Id.* at ¶ 14.)

On April 10, 2019, Plaintiff notified 6th Gear that Plaintiff was terminating 6th Gear's line of credit and accelerating the balance due and owing under the terms of the Agreement, "which

---

[4] In conjunction with the complaint Plaintiff submits the declaration of Alex P. Franch, who is employed by Plaintiff as an Account Executive. (*See* Dkt. No. 1-8.) Mr. Franch's declaration tracks the factual allegations of the complaint. (*Compare* Dkt. No. 1 at ¶¶ 6-22 *with* Dkt. No. 1-8 at ¶¶ 6-21.)

2

was $1,499,177.66." (*Id.* at ¶ 15; *see also* Dkt. No. 1-4, Ex. 4 at 2.) Plaintiff further demanded that 6th Gear surrender possession of the Inventory Collateral before April 15, 2019; 6th Gear did not cure the default or otherwise comply with Plaintiff's demand. (Dkt. No. 1 at ¶¶ 15-16.) Plaintiff sent 6th Gear another notice on July 10, 2019, "confirm[ing] that it had earlier accelerated the balance owed" and notifying 6th Gear that it was in default in the amount of $245,238.33. (*Id.* at ¶ 17; *see also* Dkt. No. 1-5, Ex. 5 at 2.) Plaintiff demanded payment of that amount on or before July 17, 2019. (Dkt. No. 1 at ¶ 17.)

Despite Plaintiff's demands, 6th Gear refuses to surrender possession of 63 specific items of Inventory Collateral "valued at $706,726.48" ("Lender-Financed Inventory") and has not paid the balance owed on the accelerated Agreement. (*Id.* at ¶¶ 18-20.) 6th Gear has made "a partial payment of $317,990," but still owes Plaintiff "a total of $710,838.27 in unpaid principal, exclusive of interest and other charges" as of August 2, 2019.[5] (*Id.* at ¶ 22.)

Plaintiff brings a cause of action for "claim and delivery" seeking immediate possession of the Lender-Financed Inventory or its value if not delivered. (*Id.* at ¶¶ 25-35; *see also id.* at 8.) Further, Plaintiff requests a temporary restraining order and preliminary injunction prohibiting 6th Gear "from disposing, selling, transferring, commingling, converting, or otherwise using the [Lender-Financed Inventory] without turning over all proceeds of any such sale immediately to [Plaintiff]" until disposition of Plaintiff's claim and delivery cause of action. (*Id.* at 8.) Plaintiff also seeks attorneys' fees, expenses, and costs incurred in enforcing its interest in the Agreement, as allowed under the Agreement. (*Id.* at ¶ 21; *see also id.* at 8.)

**II. Procedural History**

Plaintiff filed the underlying complaint on August 9, 2019, seeking the same relief sought by the instant application. (*See* Dkt. No. 1 at ¶¶ 25-41.) Plaintiff served 6th Gear with the

---

[5] Plaintiff's reply briefing in support of the instant motion includes an updated spreadsheet as of November 15, 2019, purportedly listing 42 items of Lender-Financed Inventory representing a "current balance" of $461,278.54, as well as three "units sold out of trust" in the amount of $28,490.21. (*See* Dkt. No. 28-1 at 6-7.) On the date of the hearing, November 21, 2019, Plaintiff filed an amended declaration of Wells Fargo employee Alex P. Franch, who attests that as of November 20, 2019, Plaintiff is "owed a total of $499,073.21." (Dkt. No. 29 at ¶ 21.) Mr. Franch's amended declaration includes a spreadsheet listing 41 items of Lender-Financed Inventory. (*See* Dkt. No. 29-1.)

3

summons and complaint on August 15, 2019. (Dkt. No. 8.) Plaintiff then filed an application for writ of possession two weeks later. (Dkt. No. 9.) The Court issued an order on October 8, 2019 denying the application without prejudice because it was deficient on its face for failing to provide 6th Gear with proper notice pursuant to California Code of Civil Procedure section 512.040. (*See* Dkt. No. 13 at 2-3.)

After 6th Gear failed to respond to the complaint or otherwise appear in this action, Plaintiff filed a motion for entry of default with the Clerk of Court on September 23, 2019, (*see* Dkt. No. 11), which the Clerk granted on September 27, 2019, (*see* Dkt. No. 12). 6th Gear filed the pending motion to set aside entry of default two weeks later on October 10, 2019. (Dkt. No. 14.) Plaintiff timely filed its opposition on October 24, 2019. (Dkt. No. 18.) 6th Gear did not file a reply.

Plaintiff filed the instant application for writ of possession on October 14, 2019 and noticed the application for hearing on November 21, 2019. (Dkt. No. 17.) 6th Gear did not initially object to the application but requested an opportunity to do so at the initial case management conference on November 7, 2019; the Court granted 6th Gear's request and also allowed Plaintiff to file a reply.[6] (*See* Dkt. No. 25.) 6th Gear timely filed its objection to Plaintiff's application, (Dkt. No. 26), and Plaintiff filed its reply, (Dkt. No. 27). Plaintiff then filed the amended declaration of Mr. Franch in support of its application on November 21, 2019. (Dkt. No. 29.)

The Court heard oral argument on both 6th Gear's motion to set aside entry of default and Plaintiff's application for writ of possession on November 21, 2019. At the hearing the Court instructed Defendant to file a response to Plaintiff's amended declaration within one week; Defendant did not do so.

//

//

---

[6] 6th Gear did not appear in-person at the initial case management conference nor request in advance to appear telephonically. Further, 6th Gear did not appear telephonically until the Court called 6th Gear's counsel during the conference.

4

**DISCUSSION**

**I.  Motion to Set Aside Entry of Default**

A district court may set aside the entry of default upon a showing of "good cause." Fed. R. Civ. P. 55(c). "The 'good cause' standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b)." *Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 925 (9th Cir. 2004). "To determine 'good cause,' a court must consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether [setting aside the default] judgment would prejudice the other party." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (internal quotation marks, citation, and alterations omitted). The moving party bears the burden of showing that these factors weigh in favor of granting the motion to set aside default. *Franchise Holding II*, 375 F.3d at 925-26. The standard is disjunctive; thus, "the district court [is] free to deny the motion if any of the three factors [is] true." *Id.* at 926 (internal quotations marks omitted). Put another way, the defendant must show that "any of these factors favor[s] setting aside the default," and the default may stand if any of the three factors weighs against the defendant. *Id.*

When considering whether to set aside default, a court must bear in mind that "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Mesle*, 615 F.3d at 1091 (internal quotation marks and citation omitted); *see also Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984). In addition, any doubt about the cause of default should be resolved in favor of the motion to set aside the default so that the case may be decided on its merits. *O'Connor v. State of Nev.*, 27 F.3d 357, 364 (9th Cir. 1994).

Here, consideration of the "good cause" factors supports setting aside the entry of default. In support of its motion, 6th Gear submits the declaration of its Chief Executive Officer ("CEO") John Schafer. (Dkt. No. 14-1.) Mr. Schafer's declaration demonstrates that 6th Gear's failure to timely answer the complaint is excusable because Mr. Schafer thought the company was being

represented by its former attorney when, in reality, it was not. (*Id.* at ¶ 6.) After being served on August 15, 2019, 6th Gear sent a copy of the complaint and other documents to an attorney that represented it in a previous matter, Michael Sieving. (*Id.* at ¶ 5.) However, Mr. Sieving was on vacation at the time and did not know that 6th Gear was relying on him for representation in the matter. (*Id.* at ¶ 6.) By the time Mr. Sieving informed 6th Gear that he could not represent it, on or around September 9, 6th Gear's window to timely file an answer had closed. (*Id.* at ¶ 6.) 6th Gear then obtained new representation and moved to set aside default two weeks after the Clerk's entry of default on September 27, 2019. (*See generally* Dkt. No. 14.)

6th Gear's forwarding of the complaint to its prior attorney on the day it was served shows that 6th Gear acted in good faith and that it relied on the belief that it had the benefit of counsel in this litigation. 6th Gear, thus, did not act culpably in failing to answer. The Court is similarly satisfied that 6th Gear has made an adequate showing that it has potentially meritorious defenses, especially given the declaration of Mr. Schafer submitted in conjunction with 6th Gear's objection to Plaintiff's application for writ of possession. (*See* Dkt. Nos. 14 at 7 (asserting defenses including bad faith, unclean hands, substantial compliance, latches, mistake, and arguing that it did not breach the Agreement) & 26-1 at ¶¶ 14, 16 (attesting that after it received Plaintiff's March 12, 2019 notice of default 6th Gear "made a total of 5 direct debits and wire transfers to [Plaintiff] between March 12 and March 22" in the amount of $138,576.59, and "made over 31 wire transfers and 5 direct debits totaling $1,145,815.05 to [Plaintiff] pursuant to the Agreement" between March 12, 2019 and October 4, 2019).)

Finally, the potential prejudice to Plaintiff in setting aside the entry of default does not outweigh the general rule that "whenever possible, [cases should] be decided on the merits." *See Mesle*, 615 F.3d at 1091 (internal quotation marks and citation omitted). Simply put, the facts surrounding 6th Gear's default do not reflect "extreme circumstances" such that this case should not be decided on the merits. *See id*.

Accordingly, the Court grants 6th Gear's motion to set aside the entry of default.

**II. Application for Writ of Possession**

Federal Rule of Civil Procedure 64 provides, in pertinent part: "At the commencement of

and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64. Here, Plaintiff seeks a writ of possession pursuant to California Code of Civil Procedure section 512.010, which provides that "[u]pon the filing of the complaint or at any time thereafter, the plaintiff may apply pursuant to this chapter for a writ of possession by filing a written application for the writ with the court in which the action is brought." Cal. Civ. Proc. Code § 512.010(a). A writ of possession constitutes a provisional remedy, and is, "by its nature, temporary; title and right to possession are determined by the final judgment." *Precise Aerospace Mfg., Inc. v. MAG Aerospace Indus., LLC*, No. 2:17-cv-01239-RGK-AJW, 2018 WL 3390154, at *3 (C.D. Cal. Jan. 10, 2018).

An application for writ of possession must include:

> (1) A showing of the basis of the plaintiff's claim and that the plaintiff is entitled to possession of the property claimed. If the basis of the plaintiff's claim is a written instrument, a copy of the instrument shall be attached.
>
> (2) A showing that the property is wrongfully detained by the defendant, of the manner in which the defendant came into possession of the property, and, according to the best knowledge, information, and belief of the plaintiff, of the reason for the detention.
>
> (3) A particular description of the property and a statement of its value.
>
> (4) A statement, according to the best knowledge, information, and belief of the plaintiff, of the location of the property and, if the property, or some part of it, is within a private place which may have to be entered to take possession, a showing that there is probable cause to believe that such property is located there.
>
> (5) A statement that the property has not been taken for a tax, assessment, or fine, pursuant to a statute; or seized under an execution against the property of the plaintiff; or, if so seized, that it is by statute exempt from such seizure.

Cal. Civ. Proc. Code § 512.010(b). Further, California Code of Civil Procedure section 512.060 provides that:

> (a) At a hearing, a writ of possession shall issue if both of the following are found:
>
> (1) The plaintiff has established the probable validity of the plaintiff's claim to possession of the property; and

7

(2) The undertaking requirements of Section 515.010 are satisfied.

Section 512.060 also reiterates the requirement under 512.010(b)(4) that the plaintiff "establish[ ] that there is probable cause to believe that the property is located [within a private place]." Cal. Civ. Proc. Code § 512.060(b).

The Court addresses in turn the requirements for a writ of possession and concludes that Plaintiff's application is deficient in several regards and does not meet the showing required under California law.[7]

**A.     Requirements under Cal. Civ. Proc. Code § 512.010**

**1. The basis of Plaintiff's claim and that Plaintiff is entitled to possession**

Plaintiff re-submits the declaration of its Account Executive, Alex P. Franch, in support of the instant application. (Dkt. Nos. 17-1, Ex. A & 29.) Mr. Franch attests that 6th Gear is in default under the Agreement. (*See generally id.*) The Agreement provides, in pertinent part, that upon default Plaintiff "may terminate any obligations it has under this Agreement and any outstanding credit approvals immediately and/or declare any all Obligations immediately due and payable without notice or demand." (Dkt. No. 1-1, Ex. 1 at ¶ 12.) Thus, Plaintiff has established the basis of its claim. However, the Court cannot conclude on the current record that Plaintiff is entitled to possession of the Lender-Financed Inventory for the reasons stated below.

6th Gear asserts that Plaintiff fails to establish the probable validity of its claim that it is entitled to possession of the Lender-Financed Inventory because the Agreement includes a "Binding Arbitration" clause that requires the parties to arbitrate "all actions, disputes, claims and controversies" arising out of the Agreement including its "breach, invalidity or termination." (Dkt. No. 26 at 7-8 (citing Dkt. No. 1-1, Ex. 1 at ¶ 22).) 6th Gear further opposes Plaintiff's application on the grounds that 6th Gear is not in default under the Agreement. (*Id.* at 8 (asserting that 6th Gear "has performed or substantially performed all its obligations pursuant to the

---

[7] California Code of Civil Procedure section 512.040 requires that the plaintiff's application provide notice to the defendant that includes specific information. *See* Cal. Civ. Proc. Code § 512.040(a)-(d). Plaintiff's application meets those requirements and corrects the deficiencies noted in the Court's October 2019 Order denying Plaintiff's previous application. (*See* Dkt. No. 13 at 2-3; *see also* Dkt. No. 17 at 2-3.)

8

Agreement"). The Court addresses 6th Gear's arguments in turn.

The "probable validity" of the claim element concerns section 512.060(a)(1) and the requirements that must be shown at the hearing on the writ; however, it is duplicative of the requirements that must be shown on the face of the application under 512.010(b)(1),(2). *See, e.g., Commercial Credit Grp. Inc. v. AMH Logistics, Inc.*, No. 1:19-cv-01081-AWI-EPG, 2019 WL 5783479, at *6 (E.D. Cal. Nov. 6, 2019) (citing *Ascentium Capital, LLC v. Singh*, 1:16-cv-00356 LJO JLT, 2016 WL 2595189, at *4 (E.D. Cal. May 5, 2016). "A claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." Cal. Civ. Proc. Code § 511.090. Thus, Plaintiff "must at least establish a *prima facie* case" to obtain a writ of possession. *Id.* (legislative committee comments to 1973 addition). Where, as here, "the defendant makes an appearance, the court must . . . consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation." *Id.*

### a. Arbitration Provision

6th Gear first asserts that Plaintiff fails to establish the probable validity of its claim because the Agreement includes a "Binding Arbitration" clause that requires the parties to arbitrate "all actions, disputes, claims and controversies" arising out of the Agreement including its "breach, invalidity or termination." (Dkt. No. 26 at 7-8 (citing Dkt. No. 1-1, Ex. 1 at ¶ 22).) However, the Agreement contains a carve out for "Prejudgment and Provisional Remedies" including actions for:

> injunction, repossession, replevin, claim and delivery, sequestration, seizure, attachment, foreclosure, and/or any other prejudgment or provisional action or remedy relating to any Collateral or to preserve a party's assets for any current or future debt owed by either party to the other.

(Dkt. No. 1-1, Ex. 1 at ¶ 22(g).) Because Plaintiff's application for writ of possession clearly falls within the scope of the carve out, the Agreement's arbitration provision does not affect the probable validity of Plaintiff's claim. *See PMS Distrib. Co. v. Huber & Suhner, A.G.*, 863 F.2d 639, 642 (9th Cir. 1988) ("The fact that a dispute is arbitrable . . . does not strip [the court] of authority to grant a writ of possession pending the outcome of the arbitration so long as the criteria

9

for such a writ are met."). Thus, the Agreement's arbitration provision has no bearing on the instant application.

### b. Dispute over Default and Amounts Owed

In opposition to the instant application, 6th Gear submits the declaration of its President and CEO, John Schafer. (Dkt. No. 26-1.) Mr. Schafer attests that after 6th Gear received Plaintiff's March 12, 2019 notice of default, 6th Gear "made a total of 5 direct debits and wire transfers to [Plaintiff] between March 12 and March 22" in the amount of $138,576.59, which Mr. Schafer attests "were the actual amounts due to Plaintiff." (*Id.* at ¶ 14.) Mr. Schafer also attests that upon receipt of the March 2019 notice, 6th Gear contacted Wells Fargo employees Mr. Franch and Tim Kincaid regarding "the notice and suspended line of credit." (*Id.* at ¶ 15.) Mr. Schafer attests that Mr. Franch and Mr. Kincaid reassured him that Plaintiff "would continue to allow [6th Gear] to sell the Collateral inventory while the issue was being resolved." (*Id.*) In reliance on those representations, and subsequent representations by Mr. Franch and Mr. Kincaid following the April 2019 termination notice and July 2019 notice of default, 6th Gear continued to make payments to Plaintiff. (*Id.* at ¶¶ 16, 19, 22.)

According to Mr. Schafer, 6th Gear "made over 31 wire transfers and 5 direct debits totaling $1,145,815.05 to [Plaintiff] pursuant to the Agreement" between March 12, 2019 and October 4, 2019. (*Id.* at ¶ 16.) 6th Gear's opposition includes an "Activity Summary" from 6th Gear's bank account indicating that the company has paid Plaintiff $1,078,996.81 between March 25, 2019 and October 4, 2019. That amount includes over $540,000.00 paid between the time 6th Gear received the July 2019 notice of default, which indicated that 6th Gear was in default for failing to pay "the principal balance of $201,760.56 and $43,477.77 for interest and other charges accrued through June 30, 2019," (*see* Dkt. No. 1-5, Ex. 5 at 2), and 6th Gear's last payment on October 4.

6th Gear argues that it "has been liquidating the Inventory Collateral and making substantial payments to [Plaintiff] on a consistent and regular bases," even after Plaintiff filed suit. (Dkt. No. 26 at 11.) As indicated above, that statement is supported by the Activity Summary detailing payments between March 2019 and October 2019. Indeed, the amended declaration of

10

Mr. Franch attests that as of November 20, 2019, 6th Gear owes $499,073.21 under the Agreement. (Dkt. No. 29 at ¶ 21.) That amount is substantially less than the "current balance" of the Lender-Financed Inventory that Plaintiff initially sought to recover under the instant application. (*See* Dkt. No. 1-6, Ex. 6 at 2 (listing the current balance of the specific property sought as $706,726.48).) In sum, 6th Gear's opposition raises issues as to whether 6th Gear is in fact in default under the Agreement and if so, to what extent.

Plaintiff's arguments set forth in its reply brief do not counsel a different result. In pertinent part, Plaintiff fails to adequately explain the discrepancy between the April 2019 notice of termination and acceleration, which "demand[ed] immediate payment from [6th Gear] in the amount of $1,499,177.66" representing the outstanding principal plus interest, (*see* Dkt. No. 1-4, Ex. 4 at 2), and the July 2019 notice of default, which demanded payment of $245,238.33 purportedly representing the principal balance plus interest through June 30, 2019, (*see* Dkt. No. 1-5, Ex. 5 at 2). At oral argument Plaintiff's counsel asserted that the differing amounts owed reflected in Plaintiff's correspondence with 6th Gear are a "red herring" and argued that it is undisputed that 6th Gear is in default. 6th Gear's counsel responded that the issue of default *is* in dispute.

Simply put, on this record the Court cannot say that it is more likely than not that Plaintiff is entitled to possession of the Lender-Financed Inventory. *See* Cal. Civ. Proc. Code § 511.090.

### 2. A showing that the property is wrongfully detained

For the same reasons that the Court cannot conclude that Plaintiff is entitled to possession of the Lender-Financed Inventory on this record, it cannot conclude that 6th Gear has wrongfully detained the property. Further, even if Plaintiff did satisfy the first two statutory requirements under section 512.010(b), the application is deficient on it face for the reasons stated below.

### 3. Description of the property and its value

Mr. Franch's amended declaration attests that Plaintiff is entitled to possession of 41 specific units Lender-Financed Inventory, and attaches a spreadsheet listing those units. (*See* Dkt. Nos. 29 at ¶ 22 & 29-1 at 1-2.) The spreadsheet identifies the units by manufacturer's name, invoice number, invoice date, model number, serial number, and original and current balance.

(*See* Dkt. No. 29-1 at 1-2.) Plaintiff has sufficiently described the property at issue; however, neither Plaintiff's application nor Mr. Franch's amended declaration provides any explanation as to how Plaintiff determined the property's value. *Cf. AMH*, 2019 WL 5783479, at *5 (finding statement of property's value sufficient where plaintiff provided a declaration explaining how it ascertained value); *Ascentium*, 2016 WL 2595189, at *3 (citing plaintiff's declaration addressing "total market value" and retention of "appraiser to assess the value of the [property]"). Mr. Franch instead merely attests that the spreadsheet listing the Lender-Financed Inventory is "[b]ased on [Plaintiff's] last physical inventory at [6th Gear's facility]." (*See* Dkt. No. 29 at ¶ 19.) Because the application does not include a statement addressing the market value of the Lender-Financed Inventory, it fails to satisfy the statutory requirement under section 512.010(b)(3).

### 4. Probable cause regarding the property's location

As previously discussed, Plaintiff's application must include:

> A statement, according to the best knowledge, information, and belief of the plaintiff, of the location of the property and, if the property, or some part of it, is within a private place which may have to be entered to take possession, a showing that there is probable cause to believe that such property is located there.

Cal. Civ. Proc. Code § 512.010(b)(4). Plaintiff asserts that it "has established probable cause to believe that the Lender-Financed Inventory is located at 1931 Market St. Ste. B, Concord, California 94520." (Dkt. No. 17 at 10.) In support of that assertion, Plaintiff cites Mr. Franch's declaration at paragraph 31. (*Id.*) However, neither Mr. Franch's original or amended declaration contains a paragraph 31, nor do the declarations otherwise discuss the property's specific location beyond referencing inventory taken "at Dealer's facility." (*See* Dkt. Nos. 17-1, Ex. A at ¶ 19 & 29 at ¶ 19.) Thus, the application is deficient because it does not include the statement required under section 512.010(b)(4).

### 5. A statement that the property has not been seized

As previously discussed, California Code of Civil Procedure section 512.010(b)(5) requires that the application include a "[a] statement that the property has not been taken for a tax, assessment, or fine, pursuant to a statute; or seized under an execution against the property of the plaintiff; or, if so seized, that it is by statute exempt from such seizure." Mr. Franch's declaration

does *not* attest that the Lender-Financed Inventory has "not been taken for a tax, assessment, or fine pursuant to statute, or seized under an execution against the property of the Plaintiff." *Cf. AMH Logistics, Inc.*, No. 2019 WL 5783479, at *6 (noting that plaintiff's declaration included such a statement in accordance with section 512.010(b)(5)). Nor does Plaintiff's briefing address this requirement.

\*\*\*

Accordingly, Plaintiff's application must be denied because it fails to comply with the specific statutory requirements for a writ of possession. First, the application does not establish that Plaintiff is entitled to possession of the Lender-Financed Inventory or that 6th Gear has wrongfully detained the property because 6th Gear disputes the default and amounts owed. Second, the application does not include a statement addressing the market value of the Lender-Financed Inventory. Third, the application does not include a statement establishing probable cause as to the property's location. Fourth, the application does not include a statement that the property sought has not been seized. *See* Cal. Civ. Proc. Code § 512.010(b)(1)-(4).

**B.     Post-Hearing Requirements under Cal. Civ. Proc. Code § 512.060**

**1.     Probable validity of Plaintiff's claim to possession**

As previously discussed, Plaintiff fails to establish the "probable validity" of its claim to possession because it has not shown that it is more likely than not that it "will obtain a judgment against" 6th Gear. *See* Cal. Civ. Proc. Code § 511.090.

**CONCLUSION**

For the reasons set forth above, the Court GRANTS 6th Gear's motion to set aside entry of default and DENIES Plaintiff's application for a writ of possession without prejudice. If Plaintiff files a renewed application, it must specifically address and comply with the statutory requirements under California Code of Civil Procedure section 512.010(b).

Finally, the Court notes that a mediator has been appointed. (Dkt. No. 32.) The Court is troubled by 6th Gear's failure to appear at the initial case management conference and failure to file a response to Plaintiff's reply declaration despite stating that it wanted the opportunity to do so. **The Court orders 6th Gear and its counsel to promptly respond to any requests/inquiries**

13

**from the mediator and cooperate in scheduling a mediation forthwith.** Failure to do so will be deemed a violation of an order of this Court.

This Order disposes of Docket Nos. 14 and 17.

**IT IS SO ORDERED.**

Dated: December 6, 2019

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge